of America 19-35582. We'll hear first from Mr. Weil. Did I pronounce that correctly? I'm a Weill. Weill. Okay. All right. You may proceed, Mr. Weill. My name is Ken Weill. I represent Lisa Milkovich and Deng Nguyen. I'd like to try to reserve two minutes for questions. Two minutes for rebuttal. The government's primary argument here is that the debt instrument in question is not genuine. But how do we know? Just saying that the value of the collateral is significantly less than the amount of the nonrecourse debt is not sufficient. And let me give an example. Suppose that you live in Oregon or California. You've bought a house. Genuine transaction. That debt is nonrecourse debt. Let's say you bought this house in 2019, fully leveraged. And now we go to 2020, and there's a horrible wildfire. And it wipes out the house, the landscaping, the neighborhood. The value of the collateral is going to crater. But that debt is still genuine because it was genuine when it was entered into. And if you look at Franklin and Beck, cases cited by the government, page 21 of their brief, it's very clear if you go to the source document in the case, they talk about purchasers. So this is where I need some explanation. Your wildfire hypothetical, the landowner still is the owner of the property. What I don't understand about the sequence here, also, Professor Hahr used to talk about property as a bundle of sticks. Here you have a discharge in bankruptcy, a surrender of the house, and it's only a year later. The Citibank, I think it is, engages in a short sale. At that point, what stick do the appellants have? What interest in the property do they have that allow them to claim the exemption? Well, the property is not given up at the time of the bankruptcy discharge. The personal liability is given up. The clients continue to remain in the house and live there. And it's still their house and they still have an obligation. But what about the event at the time of the bankruptcy discharge? That's different from your hypothetical, because in your hypothetical, it starts as non-recourse and stays non-recourse. You had this significant event where it goes from being recourse to non-recourse. Why isn't that a significant modification? You reference the regulation in your 20HA letter that then creates an event that would otherwise be subject to tax, but for the exclusion. It is absolutely a significant modification, and my point was going to be that we have to examine this because we have a modification. And we have two judicial doctrines and we have some treasury regulations to do the analysis about whether this modified debt instrument is genuine. One of the judicial doctrines that really goes to the heart of genuineness is the economic substance doctrine. And it asks, does this transaction, the bankruptcy discharge, have economic effects beyond tax benefits? And here there are no special tax benefits because the interest is deductible before and after the transaction. And it's self-evident that there are economic effects to bankruptcy that have nothing to do with taxes. So it's absolutely a genuine obligation. Council, let me stop you there and ask this question. I'm sure I'm blundering into areas that I probably shouldn't wander, but I'm just curious. So the bank sold the property in the short sale and then simply issued your client the 1098 form, showing they had whatever it was, $114,000 worth of money paid on the interest. The bank collected quite a bit more than that. But I understand that the bank was required to allocate some portion of it to interest and some portion of it to pay the principal down. That's just an accounting provision, right? Why does that – could the bank have just said, well, we're just going to pay all the principal first and not pay the interest? It wouldn't have made any difference, right? I mean, as an economic matter, from the bank's perspective, it doesn't make any difference. They're going to get the same amount of money, right? Well, it's a rule designed to protect the Treasury so that the first dollars in the door are taxable interest. Okay. All right. Taxable interest to Citibank. But your client didn't make any payments to Citibank. There's no monthly payments that your client was making to Citibank where Citibank gets to say, all right, of the $2,000 you paid us, $200 of that goes to interest and $1,800 of it goes to principal. Your client had been discharged, doesn't owe anything. So your client is getting the benefit of something they haven't paid. And it seems to me that the quid pro quo, if we want to look at this as an economic matter, would be that the IRS then gets to come back to your client and say, you got an economic benefit because you're no longer liable on the note. And so you acquired some, you know, $500,000 in income. It's sort of in the sky, but you got relieved of that debt. And so now let's charge that as income if you want to take the interest. Well, the personal liability disappeared. The non-recourse debt did not disappear. It's still there. It's still real. Real to your clients? Real in what sense? The clients owned the house until they sold it and they had to move out. It's very real. Right, but there wasn't anything they could do with it. Effectively, it was owned by the bank. It's not effectively owned by the bank. It's their responsibility. I get that, that the value of the collateral is less. But the question is, at the time of the modification, do we have a genuine obligation? And the non-recourse debt flows through the bankruptcy unimpaired. That's the Johnson case. And let me give an example. But even if the debt remains a genuine obligation, isn't the change in the debt from something that was less favorable to more favorable? Doesn't that result in a cancellation of debt income? No, absolutely not. And here's why. Let's suppose that y'all are correct. You've got Tufts that tells us at the time of the sale, the difference between the face value of the debt and the fair market value of the property is all included in an amount realized. What's taxed, what's there. But you're also telling me there was discharge of indebtedness income and tax attributes have to be reduced. You're taxing it twice. And what I'm saying is there's no discharge of indebtedness income because the balance sheet test, that debt is still there. And going back to the sticks and the bundles of argument. Yes, it's true that the personal liability is gone. But the debt is still there. It's still real. It passes through. I could see why Citibank would have something to complain about. But under 108A1A, would you agree the IRS could not tax your clients for the value of the discharge in bankruptcy? I would argue that 108A1 has no application because Section 61A11 or 12 at the time doesn't apply. There was no discharge of income. You have to look at the test for discharge of indebtedness income. It's a balance sheet test. This obligation is still there. And some of the bundles of sticks, I fully agree the personal liability is gone. But that debt is not gone. It's there. It's real. It has to be paid at the time of the short sale. By Citibank. But yeah, not by your client. Why is it that Citibank is paying it? What I don't understand is when you buy a house, let's say I bought a house. And I make an agreement with my lender that I'm going to borrow money. And I give my lender rights. They have lien rights. Now I'm ready to sell my house. The new borrower and their new lender says, wait a minute. We're not buying this house until the Ken's lien holder releases the lien. And Ken's lien holder says, well, I'm not releasing the lien until I get all my proceeds to which I'm entitled. And where are the proceeds coming from? They're coming from my house that I've been living in, that I own, that I'm on title. Counsel, if so, your client is asking, is it about eighteen thousand dollars? Is that about the benefit they're going to they're going to get from this on their taxes? Right. That's where we are. Could could the bankruptcy trustee have said, look, under under the rule, under the Milkovich rule decided by the Ninth Circuit in 2020, you're going to be able to claim the interest that Citibank is going to tell you after after the short sale. And I want that. And I want that to pay unsecured creditors. I don't think so. Well, you don't think so. But is there a clear answer as to why that was to why the trustee couldn't anticipate that you're going to get a tangible tax benefit in the future, which it would like to capture in order to pay off creditors? Well, I think you're talking about a post-petition event, so I don't see how the trustee is going to get it. The trustee's rights to pre-petition property, not post-petition. All right, counselor, you've used up your time. Alex, we'll give you two minutes for rebuttal because we asked you a lot of questions and we'll hear now from Ms. Wolitzer. You have you're on mute. We can't hear you. I apologize. OK, there you go. Thank you, Your Honor. May it please the court. I'm Rachel Wolitzer representing the appellant, the appellee of the United States. After the taxpayers bankruptcy discharge, the taxpayers were released from liability on the mortgage loan and had no obligation to repay it. There was no debt. They were released from the debt. That's not correct to say that there's no debt. There obviously is a debt that still survives and that then has to be satisfied at the point of sale. So that that's not a correct statement. That that is the lien, Your Honor. What remains is the lien. So in essence, that the taxpayers were bare title holders. They had titled of a property, but there was a lien on the property and that's what Citibank had. Suppose right after the bankruptcy discharge, they had, you know, found oil in the area. And all of a sudden, the property is just, you know, doubled in value. And all of a sudden, this is not an underwater mortgage. And then there's a sale and the bank gets back every penny of it. Was was there at the bankruptcy discharge a realization of cancellation of debt income in that hypothetical? Well, it depends on when the when the oil was discovered. As Mr. Weill pointed out, if there were if these were post petition events, then it wouldn't have affected the bankruptcy. You're asserting that at the moment of the bankruptcy discharge, the debt goes away. They realize an amount of income that would otherwise be taxable, but for the exclusion. And, you know, therefore, you know, anything that happens at the sale is is separate. They're two entirely separate events. And I'm just wondering if that's true, that there is a realization of income at the point of the bankruptcy discharge. If in the later sale, they actually get the full amount of the debt. The. There is a realization of income when they get the bankruptcy discharge, whether or not the bank gets the full repayment at the subsequent sale, they get every penny of the loan back. What was the amount of the income at the time of the bankruptcy discharge? Of the equity or I'm sorry, what was the value of the property? I'm sorry, what's the question? Right. So at the time of the bankruptcy discharge, the value of the property is much less than the balance of the loan. But at the subsequent sale a year later, the bank gets back every penny of the amount of the of the debt. Is there still a realization of income in that hypothetical? Yes. And what's the amount of that at the bankruptcy discharge? It's the difference. Is it the difference between the the value of the property and the balance of the loan? Is that your view? Well, the income would be realized when if the property sold and the value is higher because of the. The debt being. Paid and they ask the question a little bit. Released. Is there any theory? Let's assume the oil is found and Citibank makes an obscene profit on the short sale. Is there any theory in which the IRS can go back and assess the tax against the appellants on the amount of the discharge? It was awarded by the bankruptcy court. That's it. That's it. No, that's an exempt income based on the facts at the time of the bankruptcy. If the taxpayers realize. Realized income when they sell the property because there's enough to pay the mortgage and the property value has increased. Then they would be taxed on that at the time of the sale. Subsequent to what they taxed on the marginal difference between the amount of the mortgage and the amount of the of the sale of a property. The they would be taxed on. They would take the the amount realized. Less their basis in the property. OK, and their basis. OK, I'm just going to ask whether whether whether the bank would have to allocate some part of it to interest in some part of it to principle and whether that would make a difference for the for the for the Milkovich is as well in their in their tax reporting. Well, our position is they don't get credit for the interest, so OK, it's just whatever the overage is, whatever the marginal difference is between the more the value of the mortgage and the value of the property that is paid to them in in cash by the bank would be a taxable event for you. Is the answer that yes. The. There is no. The. Taxpayers would not be able to deduct the interest, right? OK, let me let me give you some numbers. The value of the mortgage is $500,000. The discharge in bankruptcy. We think the property is worth $400,000, so it's it's less we find. We find a judge Collins finds oil and when the property is sold a year later after the bankruptcy, it's sold for $600,000. The bank pays itself the $500,000. The note is discharged and then the bank is going to give $100,000 over the Milkovich is isn't that right? Is the $100,000 taxable? Yes, is anything more than $100,000 taxable? Well, under Tufts, the if if they include the the non recourse, if they include the the mortgage in the amount realized, then they have to include it in their basis. This seems the Congress of Simonson. You're trying to have it both ways. Then you're you're the debt survives and is real and and then carries over in the at the sale point, but not at the point of bankruptcy. I don't see how that's consistent. Well, Tufts just calls for symmetry. So if you included in your basis, you included in your amount realized, but it didn't involve bankruptcy. That's the that's that's that's the that's what distinguishes this case and makes this case so much more complicated is we've got a discharge. Right and actually for purposes of the first issue. I'd like to just clarify that the cancellation of indebtedness income issue is not pertinent to the first issue. And if the court decides and upholds the district courts decision that there was no genuine indebtedness here, then the court need not reach the cancellation of indebtedness. I understand that but I want to know the right answer to the cancellation of indebtedness and I don't see how it's consistent to say that there's income in terms of loan forgiveness at the point of bankruptcy and then at the subsequent sale when in fact, the whole thing is paid back. You have to take that into account under Tufts for purposes of calculating the tax effects of the sale. I don't see how those two propositions are consistent with one another. Well, again, as Judge Bybee pointed out, Tufts didn't involve a bankruptcy. So in Tufts, the amount realized and the basis must include the amount of the non-recourse loan. But a non-recourse loan isn't the same as a discharged loan. So here, if you look at the plain language of the statutes for purposes of the 265A1 issue, the discharge of indebtedness under section 108 is not included in income. So it is considered exempt under 265. What I'm trying to get at with my hypothetical and the post-petition oil is, is the bankruptcy discharge a realization of income? It's just a potentiality. We don't really know until the sale what is actually going to happen. And so that's my question is, is there really a realization of income at the point of the bankruptcy discharge that could be quantified as a taxable event? I know it's not taxable, but suppose it were, we'd have to calculate what the amount was. Well, again, under the code, discharge of indebtedness is considered in gross income under section 61A11 for that taxable year. But when the debt is converted from recourse to non-recourse, the debt still survives. So what's the amount of the discharge? How do you quantify that? The debt is not, the debt, the taxpayers don't have the debt. It's, it's calling it non-recourse is sort of a shorthand, but non-recourse is different than a discharged debt. A discharged debt under the bankruptcy code discharges, the discharge under section 727 of the code, the bankruptcy code, a discharge discharges debtor from all debts that arose pre-petition. So that is basically the liability is gone. The only thing that remains is the lien, the debtor's liability. It's not, there's no obligation to repay. There's no liability that is gone. All there's left is the bank's lien on the property. This way, if we, even if we characterize it as income, isn't what the code guarantees is that it's exempt. Whether you call it income or not, it cannot be taxed by the IRS. Under what, under section 108A1A. Yes, correct. But again, oh, I'm sorry, your honor. Tufts did not, as Judge Ribey pointed out, involve a bankruptcy, but also in Tufts, as I recall, taxpayers never assumed liability ever for the underlying debt. Correct. Or they bought, as a partnership, the debt on a non-recourse basis. Correct. That makes it completely different. Exactly. In Tufts. In the case of a non-recourse loan, the debtor, the taxpayer never has liability for the personal liability for the loan. So there's no discharge of liability here. But again, the court only need reach the cancellation of indebtedness income issue if the court disagrees with the district court's holding that there was no genuine indebtedness here because there was no unconditional existing obligation to pay the, to repay the loan. I mean, I understand what you said. It makes a lot of sense to say that the liability and in that sense, the debt is gone and only the lien survives. The problem is Tufts just seems to say the opposite. And that's what I'm struggling with. What, how do I resolve that? Are you looking at the cancellation of indebtedness issue? Again, I'm still looking at the 265 issue. Excuse me? 265. I'm still looking at the 265 issue. Well, again, because Tufts did not involve 265 or an interest deduction or a bankruptcy discharge, the facts and the law in Tufts are so distinguishable. There really isn't anything in Tufts that has any bearing on this case. The only thing is this call in Tufts for symmetry, which again only applies on a sale of property. If you look at the decision in Odenhall, which is cited in the appellant's brief, Odenhall explains why Tufts does not apply to interest deductions. So I'm sure more clearly than I'm trying to explain right now, the Odenhall case explains that Tufts just applies in the case of a sale and determining the amount realized on a sale and that the non-recourse note is included for those purposes and not for purposes of determining whether the taxpayer gets an interest deduction. So the facts and the law in Tufts are completely distinguishable and did not involve the statutes that are involved here that so clearly provide that the interest is exempt income. So if Tufts says that the full amount of the debt comes back for purposes of looking at what happens at the sale, why is it that the payment of interest is allocable to the cancellation that took place at the time of the bankruptcy discharge? Well, again, in Tufts, the debt didn't come back because it never went away. It was a non-recourse debt from the beginning. So there was no cancellation of indebtedness in Tufts. It was always a non-recourse debt. And the court was just saying, well, if the taxpayer wants to include it in basis, they have to include it in amount realized. So there has to be symmetry in the treatment of the debt for purposes of the amount realized. So really Tufts is just limited to what is the amount realized from this sale and did not deal with the cancellation of indebtedness 265-108. None of the statutes that so clearly provide in this case that the interest was allocable to the exempt income from the cancellation of indebtedness. But again, that issue is separate from the genuine indebtedness issue. And the court need not decide the cancellation of indebtedness issue if the court agrees with the district court that there was no genuine indebtedness because there was no unconditional existing debt. Have we ever applied a state of Franklin to a transaction in which at the time of the initial sale, as in this case, the initial purchase, there was genuine economic substance to the transaction? I'm not sure, Your Honor, about that, but I do know that Franklin is not, as Appellant argued in his opening brief, that Franklin is not just limited to tax shelters. The Noguchi case, which this court decided, and it's discussed in our brief, was not a tax shelter case. And the court applied the genuine indebtedness principles in Franklin because that is just an extension of the widely applicable substance over form doctrine, which is set forth in the Supreme Court's Frank Lyons case. And applicable to all different areas of tax law. But as far as the change in the transaction being relevant here, the character of the transaction was so different at the time of the short sale from what occurred when the debt was initiated, when the debt commenced, that the tax benefits must reflect that. There was, the taxpayers were no longer liable for the debt, and they had no equity in the property, and there was no, and the fair market value, and the house was completely underwater by $300,000. There was no chance that the taxpayers could ever, would, well, except under hypothetical Judge Collins, there was no realistic chance that the debtors would realize equity in that property. I have one final question. It's going back to the 265 issue, and that is from the Simonson case where the debt was non-recourse all along. But in describing the substance of what happened at the short sale in that case, the court said the Simonsons were relieved of the responsibility to pay the non-recourse debt when the sale closed. So the amount realized should include the full amount of that debt, and that's their explanation for applying the Tufts rule. But that seems hard to square with your assertion that the debt disappeared for all purposes at the time of the bankruptcy discharge. Well, in the short sale, having the debt, the taxpayer be relieved from the debt at the time of the short sale is different from the scope of the discharge that the taxpayer receives in a bankruptcy. The taxpayer, the taxpayers here were completely relieved of liability under their bankruptcy discharge, and that's different than the... But your theory is that there's no debt anymore. It's just a lien. But Simonson seems to say that that's wrong. Well, there was a non-recourse debt in Simonson. And when the seller, at the time of a short sale, when the seller writes down the amount of the lien, the mortgage, that is not forgiveness of income to the seller. But it's basically just an application of the Tufts principle that you have to have that symmetry, that the amount realized must include the non-recourse loan if you're including it in your basis. So it's just that's the rule, and that's what Tufts stands for, and same with Simonson. It's an application of that same rule. It doesn't have anything to do with a cancellation of indebtedness when the taxpayers receive their bankruptcy discharge, which does relieve them from liability. They were liable for the loan, and then they were relieved of liability for the loan, as opposed to the non-recourse debt where there is no release of liability or discharge of liability that would constitute income under the applicable statutes, under the plain language of the statutes. All right. Do either of my colleagues have any further questions? Okay. All right. Thank you, counsel. I let government counsel go over quite a bit. I will get. Oh, no, we that's the purpose why we had you here. We asked the question. So let's put I'm going to give an equivalent amount of time. I don't know that you use it all, but let's put 10 minutes on the clock to equalize the time. For Mr. All right. The citation about the discharge of liability is incorrect. It's 524 a two. And it says very specifically that the what's discharged operates as an injunction against the personal liability of the debtor. So it's the personal liability that goes away. I know you're not supposed to cite this for your purposes, but the 1989 private letter ruling of the service uses says that after the bankruptcy, it's non recourse debt. The whole amount of the debts in the amount realized. And and Judge Collins, you're beating on the right issue when you're talking about the discharge of indebtedness, because there's tax attribute reduction. Maybe not here, but there's definitely the possibility of tax attribute reduction. That's the whole point of what's going on in 108. And if there's tax attribute reduction, you've got double taxation. That's not what the rule is. What I want to address also is 265 a one to 65. A one denies deductions to a class of income that is wholly tax exempt. The paradigm is the borrowing to buy a tax exempt bond. The interest on the borrowing is not deductible. The PPP loans. That's why you don't get the deductions there. It's the same same thing. Class of income that's wholly tax exempt. Let's take this hypothetical. I buy a house. Assume I'm single. I stay in the house for the applicable number of years from the holding period. Section 121 says if I sell that house for $200,000, it's completely tax exempt. I don't pay a penny of tax, but I still get my interest deduction. Why is that? Because if I sold the house for $300,000, I would have taxable income. So 121 is not a class of income that is wholly tax exempt. And it's the same thing in 108. 108 is not a class of income that's wholly tax exempt. There's all this tax attribute reduction. Yes, it's possible to have a debtor that discharge indebtedness income and not have tax attribute reduction, just as it's possible in 121 to not have to pay gain on sale. But it's not a class of income that's wholly tax exempt. And then let me just say this and kind of hit on this a little bit. I don't think filing for bankruptcy is the sort of event that triggers a genuine instrument. And now it's not genuine. And we have these tests. We have the substance over form test. We have the economic substance doctrine. We have the guidance and the cottage savings regulations at F7 that we're not supposed to take into account the deterioration of the financial condition of the debtor. When you're looking at the new debt instrument, the modified debt instrument, trying to determine whether it's genuine. We have all these indicators that it's okay to file for bankruptcy and the debt remains genuine. And so I would like to just say that. The rules break in the taxpayers way. It's just it's genuine under the economic substance doctrine. But you agreed that that was the change that occurred at the point of the bankruptcy discharge was a significant modification. Why isn't there? Why isn't the difference between those two things a realization of tax? All right. All right. This is this is a realization of income. I know I got it. It's very complicated. And I'll do the best I can. It's a it's a it's a change unless there's a substantial change in payment. But there has to be a substantial change in payment expectation, which we don't have here. But you could argue that the effective day for the substantial change in payment expectation doesn't apply. So maybe you do have a deem sailor exchange. Let's continue. Now you have to have a write down of the debt. You've got to get that through one away. E10, which is a modification of a debt instrument. And that that rule says to go to 1274. And when I cited to 28 J and I put in 1274 C, it was wrong. It should have been 1274 B. But the face amount of the debt in the stated interest rate, it's all good. There's nothing improper in it. This is not an abusive situation. Filing bankruptcy is not abusive situation. And there's no write down of the debt with one away. E10 and 1274. And even if you did have a write down, even if you did, even if there were a discharge of indebtedness income to 65, they want doesn't apply. It does. This is not a class of tax exempt income that's wholly exempt. But what aspect is it not exempt? Are you saying the IRS could have taxed it? But just for it. It's a deferral. 108 is a deferral rule. And what you do is if you qualify for the exemption under 108, you're not done. You then have to ask whether my tax attributes are reduced. My capital loss carry forwards. I'm trying to understand what public policy says that on the one hand, there is not assessed tax on what has been discharged in bankruptcy. But on the other side of the coin, it has to hand over $19,000 in actual tax benefits to someone who never paid the interest at all. Well, you and I disagree on whether there was a payment. Losing your house and giving up your house feels like a payment from me for these proceeds. Well, I can see it emotionally, but I'm not sure I quite follow it financially. Well, I mean, my name's on the title. It's my house. I mean, I mean, I understand that the gut reaction is to say there's no way there could be a deduction here. You didn't make a payment for 30 bucks. I follow that. But it's a genuine obligation. 265A1 has no application here. Tufts tells us the entire amount of obligation is accounted for at the time of sale. It's still real. It's still there. And just because I don't have any equity doesn't mean it's not my property. And so we're not talking about a situation where we have. And yes, back to the point where it's not tax shelter, but we're not talking about people who are tax shelter savants. We're not talking about tax protesters. We're talking about regular old folks that got run over in the Great Recession. They had to file for bankruptcy. They lost their house. And they didn't. There's nothing devious or ungenuine about any of this. And sometimes the tax rules break in their favor. This is a strange question. I don't know whether you can answer it. So I'm in Las Vegas. And at one point during the Great Recession, something like 75 percent of the homes in Las Vegas were underwater. It feels like the situation that your clients are in should have been duplicated 10,000 times over. How come there's no precedent anyplace? Has nobody ever tried to take this besides your client? Did your clients just get really aggressive with the tax code and nobody else has ever tried to do this? No, I'll tell you why it happened, if you have time for it. The client got the mortgage interest statement. And they reported in accordance with it. And then there was a notice from the IRS that got sent to the old address, the house that was sold. And if somebody had piped up at that point and said, we've followed the 1098 and there's nothing wrong with what we did, we'd have never gotten to this point. They got to this point because there was never a response back in the beginning. So you think that thousands of Americans have been doing exactly what the Milkovichs have done and the IRS has just not seen it? Right, they're following what the 1098 mortgage interest statement says. And that's what they did. They didn't know better from worse or up from down. And I would say the other reason the case is here is because I am intensely interested in this topic. But what I thought the thing that was missed was the notice of deficiency that would have allowed them to go to tax court. And that's why we ended up in district court rather than in tax court. But, you know, that would suggest that the IRS has presumably sent similar notices to the many of the other people who would have done this. And those have gone to tax. But we don't have a tax court precedent covering the situation either. I understand. And my take on it is, oh, look, I could be wrong. And I get the point. My take has always been if you just respond and say, look, we sold the house. This is bona fide. The interest that accrued for 30 months and the first dollars in the door go to interest. I think it goes away and I think it never gets litigated. All right. Counsel, I thank both counsel for your very helpful arguments this morning and the case of Milkovich versus United States will be submitted. Thank you very much. And our session for today.
judges: Bybee, Stearns, Collins